## POCAHONTAS FUEL CO., Inc., v. EARLY et al.

District Court, W. D. Virginia, at Roanoke. Dec. 11, 1935.

606

E. L. Greever, of Tazewell, Va., and H. R. Hawthorne, of New York City, for plaintiff.

John Dickinson, Asst. Atty. Gen., John Henry Lewin and John S. L. Yost, Sp. Assts. to Atty. Gen., Jos. H. Chitwood, U. S. Atty., of Roanoke, Va., and Frank S. Tavenner, Jr., Asst. U. S. Atty., of Woodstock, Va., for defendants.

PAUL, District Judge.

The plaintiff, Pocahontas Fuel Company, Inc., has filed its bill of complaint against N. B. Early, Jr., collector of internal revenue for the collection district of Virginia, Joseph H. Chitwood, United States attorney for the Western district of Virginia, Samuel R. Brame, internal revenue agent in charge for the collection district of Virginia, and John White Stuart, United States marshal for the Western district of Virginia.

The plaintiff alleges that it is a corporation organized and existing under the laws of the state of Virginia, with its principal office in Tazewell county, in the Western district of Virginia, and that it is engaged in the business of mining, producing, and selling bituminous coal from mines located in Tazewell county, Va., and in McDowell and Mercer counties, W. Va. The bill further alleges the enactment by the Congress of the United States of the Act of August 30, 1935 (15 U.S.C.A. §§ 801–827), known as the "Bituminous Coal Conservation Act of 1935," and sets forth in general the provisions of said act. Among these, it is alleged in substance that all producers of bituminous coal are subject to have levied upon them a tax of 15 per cent. of the selling price of all coal produced, subject to the condition that if the producer shall subscribe to and agree to be bound by certain rules and regulations for the conduct of its business embodied in what is known as the Bituminous Coal Code, then any such producer so subscribing to said Bituminous Coal Code shall be entitled to a drawback or rebate of 90 per cent. of the 15 per cent. tax imposed by the act. The bill further alleges that the plaintiff has not subscribed to or accepted said code and that it does not intend to, and that because of its nonacceptance of said code the plaintiff will under the provisions of said act be subject to a tax of 15 per cent. of the sale price of all coal which it may produce. It is further alleged that said tax is now accruing, and has been accruing, on all coal produced by the plaintiff since the 1st day of November, 1935, and that the first payment of said tax will be required to be made by it upon the 2d day of January, 1936, and that it is the intention of the officers of the United States government charged with the levying and collection of said tax to levy the same and to attempt to enforce collection thereof.

The bill alleges that the provisions of the said Act of August 30, 1935, known as the "Bituminous Coal Conservation Act" are, as applied to the plaintiff, in violation of the rights of the plaintiff as guaranteed to it by the Constitution of the United States. Various grounds of unconstitutionality are alleged, among them being that the act constitutes an unwarranted delegation of the legislative function of Congress, that it deprives the plaintiff of its property without due process of law in violation of the Fifth Amendment, that it constitutes an invasion by the federal government of rights and powers reserved to the several states by the Tenth Amendment to the Constitution, that the so-called tax provided by said act is not in fact a tax but a penalty in an excessive amount designed for the sole purpose of coercing the plaintiff into subscribing to the Bituminous Coal Code, and thereby submitting its business to the unwarranted and unconstitutional regulation and interference of the federal government.

The purpose of the bill is for an injunction against the defendants hereinbefore named, and it prays that they, and each of them, be permanently and perpetually enjoined from collecting or attempting to collect directly or indirectly any tax or imposition purporting to be levied or assessed under the Bituminous Coal Conservation Act on account of the sale or other disposal of bituminous coal produced by the plaintiff.

The bill also prays that a preliminary injunction be awarded against the defendants pending a hearing upon the merits and a final determination as to the constitutionality of the act.

The bill was filed on the 21st day of November, 1935, and notice was duly served upon the defendants that the plaintiff would, on the 9th day of December, 1935, move that a preliminary injunction be granted in accordance with the prayer of said bill. In accordance with said notice, the plaintiff and defendants have appeared by counsel, the plaintiff has submitted its motion for a preliminary injunction, which motion the defendants contested, and the matters involved in said motion have been fully argued.

In support of said motion for a preliminary injunction, the plaintiff alleges that a tax of 15 per cent. upon the sale price of the coal produced by it is far in excess of any profit which it has made or

608

can make upon said sales; that said tax has been accruing since the 1st day of November, 1935, with a result that by the 2d day of January, 1936, at which time the tax will be payable and will be collected unless restrained, said tax will amount to a large sum, far in excess of any profit which plaintiff will have made from the sale of said coal, and that if said tax is not paid at the time the same is claimed to be due, there will be imposed upon the plaintiff in addition to said tax large penalties for nonpayment of the tax; that thereafter payment of the tax accruing from month to month is required monthly, with the result that if the plaintiff desires, as it does, to contest in the courts its constitutional rights in regard to its liability for said tax, it will find itself during the course of said litigation faced with demands each month for the payment of this excessive tax and that over a period of months this tax will amount to such large sums in the aggregate as that the plaintiff will be unable to pay it without a depletion of its capital assets to the point where its solvency and stability as a business will be impaired.

It is further alleged that even if the plaintiff were able to pay the tax and it were later determined that said act was unconstitutional and that the plaintiff was not liable for said tax, there is grave doubt as to the ability of the plaintiff to recover the sum so paid, and that in any event the time necessarily involved in the recovery of any amount so paid, during which time plaintiff would be deprived of the amounts of money which it had paid, would be so extended as to form a serious financial loss with possible permanent financial embarrassment to the plaintiff.

The bill filed in this case is sworn to, and the plaintiff has asked that its allegations of fact be treated and considered as an affidavit upon the application for a preliminary injunction. No answer has as yet been filed, and the facts alleged in the bill, so far as they relate to the nature of the plaintiff's business, the profits made by it upon coal produced and sold, the fact that the tax is accruing, and that the first installment of said tax will be due and payable on January 2, 1936, are not controverted by the defendants.

The matter is now before the court purely upon the motion for a preliminary injunction pending a future maturity of the cause and a hearing of it upon its merits.

The purpose of this suit is to restrain the enforcement of an act of Congress alleged to be unconstitutional. Whether the act be unconstitutional and, if so, whether the plaintiff is entitled to a permanent injunction restraining its enforcement, must await the maturity of the cause, the hearing of such evidence as may be tendered, and the arguments of counsel on the evidence and the applicable law.

At the present the sole question is whether or not there should be awarded an injunction pendente lite, an injunction preserving the rights of the plaintiff until a hearing upon the merits can be had, an injunction which, upon a complete and final hearing, may be dissolved or may be succeeded by a permanent injunction.

While no court should lightly or carelessly enjoin enforcement of a statute, even temporarily, it is equally true that it is right and proper to do so when it appears that there is no other available method by which the rights of a citizen may be protected. One of such rights is the opportunity to litigate his rights in the courts.

In the present case, a citizen finds itself facing the threatened enforcement of a law which obviously will, under any conditions, affect its business to a tremendous extent and, if its assertions be true, will in the end destroy it. It has attacked the constitutionality of this law and has now asked the enforcement of the law be restrained until its constitutionality can be considered and determined, alleging that if such enforcement is not restrained serious and irreparable injury will be done to it for which it will have no adequate remedy in case the law is ultimately held to be unconstitutional.

Upon such a motion (i. e., for a preliminary injunction) I take it to be in accordance with settled principles that the plaintiff is entitled to an injunction pendente lite if the court be satisfied: (1) That there is serious doubt as to the constitutionality of the law under attack and that the plaintiff has substantial rights affected by the operation of the law which rights he is, in good faith, seeking to have determined; (2) that enforcement of the law against the plaintiff is so imminent as that no opportunity is afforded to have a final determination of his rights before action is taken against him; (3) that enforcement of the law against him will work to his serious harm and that no adequate

remedy is open to him to repair the harm done, or that enforcement of the law pending a judicial determination of its rights will result in the imposition of taxes and penalties so burdensome as to jeopardize the existence of the plaintiff's business or cause it to forego resort to the courts for a determination of its rights.

It is my opinion that the above-named conditions exist in the present case. From a reading of the Bituminous Coal Conservation Act, a consideration of the allegations of the bill of complaint, and the application of well-known and long-established principles of law, I am of opinion that there is serious doubt of the constitutionality of the act. And I am of opinion that the plaintiff is contesting the operation of the law in an honest belief that its provisions seriously derogate its constitutional rights.

The tax is now accruing and has been since November 1, 1935. Payment of the first installment thereof will be due in less than four weeks. That the officers of the government intend to assess and collect the tax may be assumed and is not denied. If the tax be not paid when due, penalties of large amounts will be added. I do not think the plaintiff is required to wait until the tax and penalty are assessed and effort made to enforce them by levy before seeking its remedy. The prayer for a preliminary injunction is therefore not premature or needless, for it is apparent that no final determination of the cause can be had prior to the date when the government may undertake to collect the tax.

If the plaintiff is compelled to press to a final determination the rights it has asserted in this action without protection from the operation of the questioned law while doing so, it is faced with a most serious situation. It is apparent that the so-called 15 per cent. tax is not a tax in any true sense. It is obvious that it is a penalty to compel producers to accept the code. The tax began only after the code was formulated and ends when the code ends. So long as a producer declines or fails to accept the code, he is subject to the full 15 per cent. penalty, which he can escape only by surrendering rights for the protection of which this suit is brought. There is no provision laying a tax of 1½ per cent. upon both code members and non-code members alike. Therefore, the court is not dealing with a 1½ per cent. tax, but with a 15 per cent. penalty. No producer could pay the penalty for any length of time and continue to exist. Therefore, any producer might well hesitate before seeking to obtain a judicial determination of its rights under this law if it knew that, during that period which was necessary to do so, there was piling up against it taxes and penalties which, if it were compelled to pay, might destroy it. Under such strongly coercive influence, it might well decide that it was better to preserve its existence and forego the right which every citizen has to a judicial determination of his rights, even at the cost of submitting to a law which it earnestly believed was unconstitutional. Such a situation imposes so great a risk upon the citizen that he dare not resort to the courts. They are in effect closed to him.

It is my opinion that section 3224, Revised Statutes (U.S.C. title 26, § 1543, 26 U.S.C.A. § 1543) has no application here. The so-called "tax," the collection of which the plaintiff seeks to restrain, is not a tax but a penalty imposed for failure to comply with or submit to the provisions of the act. I am of opinion that the principles laid down in Oklahoma Operating Co. v. Love, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N. S.) 932, 14 Ann.Cas. 764; and Wadley Southern Ry. v. State of Georgia, 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405, apply here, and that the injunction pendente lite should be granted.