**JEWELL RIDGE COAL CORPORATION v.
EARLY, Collector of Internal
Revenue, et al.**

**VIRGINIA IRON, COAL & COKE CO. et al.
v. SAME.**

District Court, W. D. Virginia, at Roanoke.
Jan. 28, 1936.

R. O. Crockett, of Tazewell, Va., for plaintiff.

Joseph H. Chitwood, U. S. Atty., of Roanoke, Va., and Frank S. Tavenner, Jr., Asst. U. S. Atty., of Woodstock, Va., for defendants.

PAUL, District Judge.

The plaintiff, a resident of this district and a producer of bituminous coal, has instituted a suit in equity seeking to restrain N. B. Early, collector of internal revenue, and other officers of the federal government from enforcing certain provisions of the act of Congress commonly known as the Guffey Coal Act (15 U.S.C.A. § 801 et seq.).

There is no need here to recite in detail the provisions of the Guffey Act. In broad and brief outline it imposed upon all producers of bituminous coal a tax (so-called) of 15 per cent. on the sale price of all coal produced; with the provision that all producers who accept and agree to be bound by the provisions of what is known as the "Bituminous Coal Code" shall be entitled to a drawback of 90 per cent. of the 15 per cent. tax. A producer who subscribes to the Code agrees to conduct his business in compliance with the terms and conditions of the Code and in consideration thereof his tax is reduced to 1½ per cent. Producers who do not accept the Code are required to pay the full 15 per cent. tax. It is apparent that the exaction of 15 per cent. imposed by the Guffey Act is not a true tax but is in effect a penalty for the purpose of compelling producers to accept the Bituminous Coal Code.

There are now pending before this court a number of suits brought by producers who

have not accepted the Code and who have alleged their intention not to accept it; the purpose of which suits is to enjoin the officers of the government from assessing or collecting the 15 per cent. tax. The bills in those cases allege various grounds of unconstitutionality of the Guffey Act. This court, believing that there are serious doubts as to the constitutionality of the Guffey Act and further believing that if producers were compelled to pay the 15 per cent. tax pending a final determination of the constitutional question they would be done irreparable harm for which they had no adequate remedy at law, granted temporary injunctions against the collection of the 15 per cent. tax pending final hearings. The reasons for so doing are set forth in the memorandum opinion of the court in Pocahontas Fuel Co. v. Early, et al. (D.C.) 13 F.Supp. 605, handed down at Roanoke on December 11, 1935.

The instant case presents a situation definitely different from those just above referred to. The bill of complaint here alleges the unconstitutionality of the Guffey Act on substantially the same grounds as are advanced by the producers who have not accepted the Code, but it appears that the plaintiff in the instant case, some time before bringing its suit, accepted the provisions of the Bituminous Coal Code and thereby relieved itself of liability from all of the tax except the 1½ per cent. The prayer of its bill is that the act be declared unconstitutional, and that the officers of the government be restrained from collecting the 1½ per cent. tax. In other words, the plaintiff has subscribed to the Code and thus reduced its tax liability to 1½ per cent., and now seeks to enjoin collection of this 1½ per cent.

This suit was instituted on December 31, 1935, and on the same date the plaintiff moved for a temporary injunction alleging that unless such temporary injunction were granted pending final determination of the cause, the plaintiff would be done irreparable injury, and that it had no adequate remedy at law. Counsel for the defendants was present on the motion for a temporary injunction, but with only the briefest notice which afforded no opportunity to prepare for argument. The court, therefore, limited its action to granting a preliminary restraining order effective, with the consent of counsel for the defendants, until January 13, 1936, at which time the defendants were directed to appear and show cause against a temporary injunction. The matter has now been fully argued.

■ It should be made clear that this court has no right to enjoin the collection of a tax or penalty upon the sole ground that the law which imposes it is unconstitutional. Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816, and cases there cited. To justify such intervention by a court of equity, it must also be alleged and shown that the plaintiff has no adequate remedy at law. That is, that there is no method of obtaining a refund of the tax when paid; or, even where there is a purported method of obtaining a refund, there exist such extraordinary and exceptional circumstances attending the exercise of such purported remedy as to make it ineffective for the protection of the taxpayer.

The Guffey Act (section 7 [15 U.S.C.A. § 811]) provides: "All provisions of the law, including penalties and refunds, relating to the collection and disposition of internal revenue taxes, shall, insofar as applicable and not inconsistent with the provisions of this Act [chapter], be applicable with respect to taxes imposed under this Act [chapter]."

■ If I construe the above-quoted provision correctly, it makes available to the taxpayer the remedies for refund of taxes set forth generally in the internal revenue laws. If I am correct, the plaintiff has an adequate remedy for refund of any taxes illegally collected.

In the cases of Pocahontas Fuel Co. and other producers (heretofore referred to) who were not subscribers to the Code and who sought to enjoin collection of the entire 15 per cent. tax, and in which temporary injunctions were granted, it was the belief of the court that, although a remedy at law was ostensibly saved to the taxpayer under section 7 (quoted supra), the 15 per cent. tax or penalty was so excessive and its payment would have required the taxpayer to raise and pay over such large amounts of money as that its financial stability might be destroyed during the prolonged period involved in determining the constitutionality of the act and the ensuing administrative steps attendant upon a refund of the amounts paid. Under these unusual circumstances, the taxpayer was faced with the prospect of irreparable harm from which the purported legal remedies afforded no adequate protection.

But no such conditions exist in the instant case. The plaintiff here faces a tax of only 1½ per cent. There is no allegation that it is unable to pay it. The very fact that the plaintiff has voluntarily subscribed to the Code and thereby evinced its willingness and intention to pay the 1½ per cent. tax is evidence of its belief that it can pay the tax without injury to its business. That it has, in this suit, offered to pay the tax into court is further evidence of its ability to raise and pay over the amounts involved by such a 1½ per cent. tax.

The plaintiff here voluntarily subscribed to the Code and thereby became subject to the obligations and the advantages attendant upon Code membership. It does not allege that it subscribed to the Code through ignorance of its rights, nor does it now seek to disavow its subscription to the Code and to assume the status of a non-member. On the contrary, counsel for the plaintiff has explicitly declared its intention and desire to retain its status as a Code member, to abide by the provisions of the Code as to the conduct of its business, and to retain such advantages as are accorded to Code members. One of these advantages was a reduction of its tax from 15 per cent. to 1½ per cent., and it now seeks relief from payment of this 1½ per cent. The allegations of the bill upon which it grounds its prayer for this relief are in substance only that the act is unconstitutional. As I have pointed out, the mere allegation of the unconstitutionality of the act levying the tax is not sufficient to enjoin its collection, whether it be 15 per cent. or 1½ per cent. There must be a further showing of the inadequacy of any legal remedy to repair the harm done through payment of the tax, in the event the law is ultimately held invalid. The plaintiff makes no such showing, and it is the opinion of the court that an adequate legal remedy is provided.

It is true that the plaintiff makes the further contention that, inasmuch as this court has restrained the collection of the full 15 per cent. tax against producers not members of the Code, the plaintiff, if compelled to pay the 1½ per cent., will be at a great disadvantage in conducting its business in competition with these producers who are now paying no tax. This fact affords no ground for granting the relief prayed for. This court cannot exercise the power of injunction merely to equalize the conditions of competition in any industry, where no other grounds for granting the remedy are offered. The limitations upon courts in granting injunctions against collection of taxes and penalties, established both by statute and precedent, are narrow and well defined. They have been pointed out hereinbefore, and they exclude the granting of an injunction here.

It may be here pointed out that the plaintiff, through membership in the Code, holds certain advantages over nonmembers. I refer particularly to that portion of the act (section 14 (a, b), 15 U.S.C.A. § 818 (a, b) which provides that Code members only shall be allowed to sell coal to the United States government or any of its agencies, and that all persons who enter into any contract with the United States government or any of its agencies shall buy all coal used in performance of such contract only from Code members. Considering the multiple activities of the federal government, these provisions open to Code members a widespread market that is denied to nonmembers. The plaintiff, by adherence to the Code, seeks to retain this advantage while at the same time seeking to be relieved of paying the 1½ per cent. tax. If this were permitted, the plaintiff would be relieved of all burdens entailed by the law while retaining all advantages of Code membership. Like nonmembers, it would be paying no tax while at the same time enjoying a large and profitable market denied to nonmembers. If there were no other considerations involved in this case, this situation would make it inequitable to grant the relief prayed for.

The further contention is made that section 3224, Revised Statutes, forbidding the exercise of injunction to restrain collection of taxes, is not applicable here for the reason that the exaction imposed is not a true tax, and there are cited in behalf of this contention the case of Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061, and the case of Rickert Rice Mills v. Fontenot (Rice Millers' Case), 56 S.Ct. 374, 80 L. Ed. ——, decided January 13, 1936, the same date on which the instant case was argued. Conceding that the 15 per cent. tax imposed by the Guffey Act was for the purpose of coercing coal producers to subscribe to the Code and is not a true tax but a penalty which producers may avoid by becoming Code members, it does not follow that the 1½ per cent. levied upon those who have subscribed to the Code and the imposition of which is unconditional and unavoidable by any further act is to be treated as a

penalty upon such Code members. The term penalty connotes an exaction which may be escaped by following a prescribed course of conduct which is made a condition of such escape. However, I do not think it necessary to hold that the 1½ per cent. exaction to which the plaintiff is subject is a true tax in order to justify refusing an injunction against its collection. In Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 551, 66 L.Ed. 1061, the Supreme Court held that section 3224, R.S. (26 U.S.C.A. § 1543), was not applicable in a suit to restrain collection of a penalty imposed under the internal revenue law. But in that case the penalty was in effect a punishment for violation of the criminal law. As the court said:

"A revenue officer without notice has undertaken to assess a penalty for an alleged criminal act and threatens to enforce payment by seizure and sale of property without opportunity for a hearing of any kind.' * * *

"And certainly we cannot conclude * * * that Congress intended that penalties for crime should be enforced through the secret findings and summary action of executive officers. The guaranties of due process of law and trial by jury are not to be forgotten or disregarded."

The remedy by injunction was approved, not merely because the exaction was a penalty and not a true tax, but because the assessment and collection of the penalty constituted, in effect, conviction and punishment for a crime without opportunity for defense.

As a matter of fact, the Supreme Court at the same term and only a few weeks before the decision in Lipke v. Lederer had decided in the Child Labor Tax Case, 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L. R. 1432, that the so-called tax imposed by the Child Labor Tax Law (40 Stat. 1057, 1138) was in reality a penalty designed to compel compliance with a law held to be unconstitutional. But on the same day the court held that section 3224, R.S., did apply to prevent injunctive relief against collection of this penalty where there was no showing of a lack of legal remedy for recovery of the penalty. Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816. I know of no case where the Supreme Court has held that the applicability of section 3224, R.S., is determined by whether the exaction is a true tax or a penalty. The cases wherein injunctive relief has been approved have turned on the lack of adequate legal remedy for the taxpayer, either because no method was provided for recovery of the tax or because extraordinary and unusual circumstances existed which made the purported method of recovery unavailable for the complete protection of the taxpayer.

I can see nothing in the opinion in the Rice Millers' Case which alters these principles in any way. I cannot read it to uphold the contention that an injunction may issue merely because the exaction is held to be a penalty and not a true tax. Indeed, as I read that opinion it goes no further than to say, in substance, that where the collection of certain exactions had theretofore been enjoined and the funds impounded in Court pending a determination of the constitutionality of the law under which they were assessed, and that law was subsequently held to be unconstitutional, the funds impounded in court should be returned to the taxpayer. The opinion in the Rice Millers' Case does not undertake to point out the conditions wherein injunctions may properly issue against the collection of taxes or penalties and when they may not. It does nothing more than say that where an injunction has been issued and the law imposing the exaction has later been held unconstitutional, the government has no right to make further effort to collect such taxes, and any tax funds impounded by the court must be returned to their legal owner. There is nothing revolutionary in this; it would seem to follow inevitably.

The importance and significance of the Rice Millers' Case, as I see it, does not lie in the opinion handed down on January 13th, but in the action of the court some weeks previous thereto when it granted the injunction in favor of the processors. By that act it established the right of the courts to enjoin governmental exactions under certain circumstances. The circumstances which dictated the granting of the injunction there have not, so far as I know, been embodied in any written statement of the court. We can only assume that they were the same which caused a number of the District Courts to take similar action, namely, that it appeared to the court that the rights of the taxpayer could be adequately protected only by restraining collection of the tax until the constitutionality of the law could be considered and adjudged.

614

In the instant case, the taxpayer has, in my opinion, an adequate remedy at law for recovery of the tax in case the Guffey Act is hereafter held unconstitutional, and, therefore, no injunction should issue against its collection.

There is also pending the case of Virginia Iron, Coal & Coke Co. & Benedict Coal Corporation v. Early, Collector et al., in which all of the conditions as to institution of the suit, the granting of a preliminary restraining order, and the hearing upon a temporary injunction are similar to those in the case here discussed. The plaintiffs in that case are likewise members of the Code, and the facts and conditions of the two cases are similar, with the sole exception that in the last-named case the plaintiffs do not offer to pay the 1½ per cent. tax into court pending determination of the constitutionality of the Guffey Act. The cases have been argued together, and what is said in this opinion is equally applicable to both cases. Temporary injunctions will be refused, and the preliminary restraining orders granted December 31, 1935, will be dissolved.