**LOWDEN et al. v. IROQUOIS COAL CO.**

No. 43762.

District Court, N. D. Illinois, E. D.

April 19, 1937.

Daniel Taylor and Harry E. Boe, both of Chicago, Ill., for Chicago R. I. & P. Ry. Co.

Gariepy & Gariepy, of Chicago, Ill., for Iroquois Coal Co.

WILKERSON, District Judge.

Plaintiff sues for balance of freight charges on five cars of coal shipped over the Illinois Central and Rock Island Railroads from Uniontown, Ky., to Davenport, Iowa. The coal was sold by defendant to the Tri-City Coal Company. It was purchased by defendant from Sackett Fuel Company of Louisville, Ky., and directions given to that company for its shipment. The Sackett Fuel Company in turn purchased the coal from the Interstate Coal Company, and that company delivered the coal as consignor to the Illinois Central Railroad for shipment. The defendant had no dealings with the Interstate Coal Company.

Bills of lading were not issued by the initial carrier when the coal was delivered for shipment. In accordance with a long-established custom, and one very generally followed with respect to shipments of coal, the consignor prepared sheets which are known in the trade as "manifests." Each sheet covered several cars, and with respect to each car stated the car number and initial, the consignee, the routing, the weight and grade of coal, and other particulars concerning the car. The sheets also contained other information relating to the handling of the output of the Interstate Coal Company by the Illinois Central Railroad Company. Each of the manifests contained the following statement signed by the agent of the Illinois Central at Uniontown: "This shipment is tendered and received subject to the terms and conditions of the company's uniform bill of lading effective August 1, 1930." On each sheet there was the following statement signed by the Interstate Coal Company: "Subject to Section 7 of conditions, if these shipments are to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of these shipments without payment of freight and all other charges."

Some time after the coal was shipped bills of lading in the prescribed form were made out by the Illinois Central Railroad and delivered to the shipper. When the coal reached Davenport it was delivered by the Rock Island agent to the consignee

without requiring payment of the freight charges. The consignee failed in business and turned over its property to a trustee. The coal in question was sold and a part of the proceeds applied on the freight charges. This suit is for the balance.

Plaintiffs assert that the nonrecourse indorsement on the manifests or receipts issued by the Illinois Central Railroad is not in accordance with the terms of the uniform bill of lading published by the carriers and filed with the Commission, and that, therefore, the consignor is not released from the payment of the freight charges.

Paragraph 7 of section 6 of the Interstate Commerce Act, as amended, 49 U.S.C. A. § 6. (7), requires carriers to collect the rates named in the tariffs filed and in effect at the time of the shipment, and· the carrier may not by any act or omission in its part disable itself from collecting from the person liable therefor the rates specified in the effective tariffs.

■ Delivery of goods to a carrier for shipment does not, under the Interstate Commerce Act, impose upon a shipper an absolute obligation to' pay freight charges. So far as the statute is concerned carrier and shipper are left free to contract subject to the rule which prohibits discrimination. The carrier is at liberty to require prepayment of freight charges or to permit that payment to be deferred until the goods reach the end of the transportation. Where payment is so deferred the carrier may require that it be made before delivery of the goods, or concurrently with the delivery, or may permit it to be made later. Where the payment. is deferred the contract may provide that the shipper agrees absolutely to pay the charges, or it may provide merely that he shall pay if the consignee does not pay the charges demanded upon the delivery of the goods. Or the carrier may accept the goods for shipment solely upon the account of the consignee, and knowing that the shipper is acting merely as agent for the consignee, may contract that only the latter shall be liable for the freight charges. Or both the shipper and the consignee may be made liable. Nor does delivery of goods to a carrier necessarily impart, under the general law, an absolute promise by the shipper to pay the freight charges. Louisville & N. R. Co. v. Central Iron Co., 265 U.S. 59, 67, 44 S.Ct. 441, 442, 68 L.Ed. 900; Wadley Southern R. Co. v. Georgia, 235 U.S. 651, 656, 35 S.Ct. 214, 59 L.Ed. 405.

Paragraph 11 of section 20, 49 U.S.C. A., requires the carrier to issue for each shipment a receipt or bill of lading. The receipts which were issued by the Illinois Central recite that the shipments were received subject to the conditions of the company's uniform bill of lading effective August 1, 1930. This uniform bill of lading was a part of the published rules of the carrier on file with the Interstate Commerce Commission.

Section 7 of the uniform bill of lading provides: "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may be lawfully authorized to do so, no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all lawful charges except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor * * * shall not be liable for such charges. * * *"

Paragraph 2 of section 3 of the Interstate Commerce Act, as amended, 49 U.S.C. A. § 3 (2), is as follows: "No carrier by railroad subject to the provisions of this chapter shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the commission may from time to time prescribe to assure prompt payment of all such rates and charges and to prevent unjust discrimination: Provided, That the provisions of this paragraph shall not be construed to prohibit any carrier from extending credit in connection with rates and charges on freight transported for the United States, for any department, bureau, or agency thereof, or for any State or Territory or political subdivision thereof, or for the District of Columbia."

Pursuant to this section, the Interstate Commerce Commission prescribed the following rule: "1. Where retention of possession of any freight by the carrier until the tariff rates and charges thereon have been paid will retard prompt delivery or

will retard prompt release of equipment or station facilities, the carrier, upon taking precautions deemed by it to be sufficient to insure payment of the tariff charges within the period of credit herein specified, may relinquish possession of the freight in advance of payment of the tariff charges thereon and may extend credit in the amount of such charges to those who undertake to pay such charges, such persons being herein called shippers, for a period of ninety-six hours to be computed as follows: * * *"

The receipt which was issued by the Illinois Central Railroad Company, the initial carrier, stated that the shipments were received subject to the terms and conditions of the company's uniform bill of lading effective August 1, 1930. The form of that bill of lading was a part of the effective rules and regulations of the carrier published and filed in accordance with the provisions of the Interstate Commerce Act.

It is my opinion that the legal effect of the statement on the receipts issued by the Illinois Central Railroad Company is precisely the same as if the provisions of the uniform bill of lading were set out in full in the receipt. Railroad tariffs, rules and regulations are usually long, involved, and technical documents. They necessarily become a part of a contract for the transportation of property. Of course it is not necessary that a carrier shall set out in full in every receipt given or contract made the language of the tariff or rule. It is sufficient to make the tariff or rule a part of the contract by apt reference. Any other practice would be an impediment to the transaction of business and would put the carrier to wasteful and unnecessary expense.

If the provisions of the bill of lading are incorporated in the receipt by reference to the published regulations of the carrier, then the nonrecourse statement executed by the shipper should be given the same effect that it would have if the language of the uniform bill of lading were copied in full in the receipt.

Plaintiffs are not aided by the regulation prescribed by the Interstate Commerce Commission pursuant to paragraph 2 of section 3 of the act. The regulation operates as permission to the carrier, whose duty it is to collect the freight charges, to extend a limited credit to the consignee. It does not have the effect of throwing the liability for the freight charges back on the consignor if the consignee to whom credit has been extended fails to pay the carrier whose duty it is to collect the freight charges. Indeed, any such interpretation of the regulation would render it invalid as an improper exercise of the authority of the commission under paragraph 2 of section 3.

In my opinion the defense made here would sacrifice the substance of the statute and the tariffs and regulations established thereunder to mere formality. It would produce a result which is directly contrary to the plain intention of the parties to the contract of shipment. If accepted, it will require a change in the established custom with reference to the handling of shipments of coal, and will result in inconvenience and unnecessary expense.

There will be a finding for the defendant.