**SACHS et al. v. UNIVERSAL CAR LOADING & DISTRIBUTING CO., Inc.**

No. 47 C 850.

District Court, N. D. Illinois, E. D.

April 16, 1948.

Joseph Z. Willner, of Chicago, Ill., for plaintiffs.

Pruitt & Grealis, of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

The complaint in this case filed June 10, 1947, sets out that Plaintiff Joseph Sachs is a resident of the City of New York, engaged in the business of buying and selling liquor at wholesale under the name of Atlantic Liquor Wholesalers. That Freight

Transportation Engineers, Inc. is a corporation of Illinois engaged in the business of general traffic counsellor and auditor of freight accounts. That defendant is a corporation of Illinois licensed to do business in Illinois; that it is a freight forwarder, holding itself out to the general public to transport property for compensation between points in New York and points in Indiana, and for such transportation utilizes the services of a carrier subject to Parts I and II of the Interstate Commerce Act, and as a freight forwarder is subject to Part IV of said Act.

The court's jurisdiction rests on the ground that the action arises under the Interstate Commerce Act, Title 49 U.S. C.A. and particularly with respect to §§ 1004 and 1005(c), pertaining to unjust and unreasonable rates and the observance of published rates in connection with service, specified in its tariffs.

It appears from the complaint that Sachs assigned to Freight Transportation Engineers 50% of his claim against defendant, and that this action is brought by plaintiffs as co-owners of the entire claim against defendant. The complaint alleges that the claim covers shipments made by W. P. Squibb Distilling Company to Sachs for the period from February 25, 1944, to March 30th, 1944, and paid for by Sachs, which rates are charged to be excessive, unjust and unreasonable, and unlawful to the extent that they exceed the tariffs on file, and are in violation of Sec. 404(a) of Part IV of the Interstate Commerce Act, 49 U.S.C.A. 1004(a), and are inapplicable in violation of Sec. 406(c) thereof, 49 U.S. C.A. § 1006(c).

That plaintiffs have been injured in the sum of $1,675.21 and interest and they pray that the assailed rates be found inapplicable and that this court enter a judgment against defendant in the above amount.

The defendant filed its answer to the complaint setting up three defenses, the first being a general statement that the complaint fails to state a claim against defendant; second, that a rule of limitation set forth in the tariff filed with the Interstate Commerce Commission was in effect and therefore barred plaintiffs' action; and

third, pleading that Sec. 163(c) of Part I of the Interstate Commerce Act, 49 U.S. C.A. § 16(3) (c), is also a bar to plaintiffs' action.

Plaintiffs then filed a motion to strike the defendant's second and third defenses, and this motion is now before me for disposition.

In its second defense defendant claims, by reason of the filing of the rule of limitation with the Interstate Commerce Commission at the time it filed its tariffs showing its rates and charges for service and all classifications, rules, regulations and practice with respect thereto, that plaintiffs as well as all other shippers were bound thereby and that all claims not filed within the period of limitation set out in said rule are barred from recovery.

Plaintiffs urge that the Interstate Commerce Commission has jurisdiction only over rates, rules and regulations pertaining to rates, and that therefore the filing by defendant of its rule of limitation is in effect a statute of limitations and is not "a tariff matter." Plaintiffs also urge that the Interstate Commerce Act, as amended, does not contain any limitation provision whatsoever as to freight forwarders and motor carriers, such as it establishes for railroads, and that claims for overcharges are so inherently different from claims for loss or damage, as to furnish a reasonable basis for a distinction between them, and that in the case of claims for overcharges the policy set out in Sec. 405 of Part IV overrides the policy of encouraging the prompt assertion of claims sanctioned in Sec. 20(11) of Part I, 49 U.S.C.A. § 20 (11).

Defendant maintains that the shipments described in the complaint were transported by it under a tariff on file with the Interstate Commerce Commission, and containing a rule which provided that the defendant would honor claims filed with it for overcharges as a result of errors in the assessment of rates, weights or charges only when claims were filed within two years from the time the shipments were delivered or tendered for delivery, and not thereafter. Defendant also maintains that plaintiffs did not file with the defendant

any claim for the alleged overcharges which are the subject matter of this suit, and because of their failure to do this the cause of action did not accrue within the time specified in the rule, and plaintiffs' right to recover was therefore barred.

Defendant is a freight forwarder, subject to the jurisdiction of the Interstate Commerce Commission and the provisions of the Interstate Commerce Act, contained in Sections 401 to 422, both inclusive of Part IV of the Act, 49 U.S.C.A. §§ 1001–1022. Section 404(a) imposes a duty on all freight forwarders to provide and furnish the service covered by its permit, and "to establish, observe, and impose just and reasonable rates and charges therefor and just and reasonable classifications, regulations, and practices relating thereto and to the issuance, form, and substance of receipts and bills of lading, the manner and method of presenting, marking, packing, and delivering property for transportation * * * the facilities for such transportation, and all other matters relating to or connected with such transportation."

Sec. 404(a) further forbids and declares unlawful all unjust or unreasonable rates, charges classifications, regulations or practices.

Sec. 405 provides for the filing of the tariffs of freight forwarders, which tariffs "shall plainly state * * * any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such rates or charges, or the value of the service rendered to the shipper or consignee."

Sec. 405(b) provides that the Interstate Commerce Commission "shall by regulations prescribe the form and manner in which the tariffs to which this section applies shall be published, filed, and posted; and the Commission is authorized to reject any tariff filed with it which is not in accordance with this section and with such regulations. Any tariff so rejected by the Commission shall be void and its use shall be unlawful."

Sec. 405(c) provides that no freight forwarder shall charge or demand or collect or receive a greater or less or different compensation for the service than the rates or charges specified in its tariffs on file; and shall not refund or remit in any manner or by any device any portion of the rates, or extend to any person any privileges or facilities in connection with such service or which would affect the value thereof, except such as are specified in its tariffs. This section also prohibits freight forwarders making any change in any rate, charge, classification, regulation or practice specified in any tariff "except after thirty days' notice of the proposed change."

Sec. 406 sets out the powers which are delegated to the Commission in the matter of the regulation of rates and practices of freight forwarders. Upon the complaint of any person in writing that any act or omission of a freight forwarder was in violation of the Act, the Commission is required to investigate, if the freight forwarder fails to make a satisfactory explanation of same. If after a hearing the Commission is of the opinion that any rate or charge or any classification or regulation relating thereto is unjust or unreasonable or unjustly discriminatory or unduly preferential the Commission is required to prescribe the lawful rate to be observed, "or the lawful classification, regulation, or parctice thereafter to be made effective."

Sec. 406(d) prescribes the rules by which the Commission is to be guided in passing upon complaints.

The above provisions would seem to demonstrate that the rule here involved is a "tariff matter" and that the Interstate Commerce Commission is vested with authority to determine whether or not it deals with a subject which may not be incorporated in a tariff, or is unjust or unreasonable or unjustly discriminatory or is unduly preferential or prejudicial.

Under Sec. 406(d) the Commission is required to pass upon the lawfulness of classifications, regulations and practices, to "give due consideration, among other factors, to the inherent nature of freight forwarding; to the effect of rates upon the movement of traffic by the freight forwarders for which the rates and charges are prescribed; to the need, in the public

interest, of adequate and efficient freight-forwarder service at the lowest cost consistent with the furnishing of such service; and to the need of revenue sufficient to enable freight forwarders, under honest, economical, and efficient management, to provide such service."

The Interstate Commerce Commission itself has recognized that a tariff rule prescribing a limited period for the filing of claims for alleged overcharges against a freight forwarder may properly be incorporated in a tariff. In the case of Schou-Gallis Company, Ltd. v. International Forwarding Company Docket No. 29395, the complainant contended that a tariff rule which dealt with the same subject matter as the present rule, but differed materially in its provisions from the rule here involved, was not proper for incorporation in a tariff and was unlawful. The Commission however held that a provision prescribing a reasonable time within which claims for overcharges must be filed with the freight forwarder might lawfully be incorporated in a tariff, but that the rule there under consideration was so indefinite as to be unlawful, and ordered the cancellation of the same "without prejudice to the establishment of a similar provision in conformity with the views expressed herein."

Both sides agree that this is the only case in which either the courts or the Commission has been called upon to consider the validity of a rule of this type.

■ Plaintiff also urges that the tariff rule here involved is an ex parte rule and not contained in the specific contracts for the transportation of the shipments in question.

Section 413 of Part IV of the Interstate Commerce Act provides that the provisions of Section 20(11) and (12) of the Act shall likewise apply to freight forwarders in the case of service subject to Part IV and that freight forwarders shall be deemed both the receiving and delivering transportation company for the purposes of Sections 20 (11) and (12). By the order of the Interstate Commerce Commission in Bills of Lading of Freight Forwarders, 259 I.C.C. 277, freight forwarders are required to "provide for the issuance of a through bill of lading to the shipper at initial point of origin to cover transportation therefrom to ultimate destination." The standard form of bill of lading, approved by the Interstate Commerce Commission, provides that the goods therein described are "received subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading." Paragraph 3 of defendant's second defense sets out that the shipments described in plaintiffs' complaint were received and transported by defendant subject to the classifications and tariffs in effect on the date of the issuance of the various bills of lading, and that the tariff rule providing that the forwarder would honor claims filed for overcharges only when the same were filed within two years from the time when the shipments were delivered, were on file with the Interstate Commerce Commission, and in full force and effect at the time the shipments here complained of were made. In Lowden v. Iroquois Coal Co., 18 F.Supp. 923, 925, the District Court for the Northern District of Illinois said:

"Railroad tariffs, rules and regulations are usually long, involved, and technical documents. They necessarily become a part of a contract for the transportation of property. Of course it is not necessary that a carrier shall set out in full in every receipt given or contract made the language of the tariff or rule. It is sufficient to make the tariff or rule a part of the contract by apt reference. Any other practice would be an impediment to the transaction of business and would put the carrier to wasteful and unnecessary expense."

Consequently the tariff rule now under consideration became a part of the contract of carriage made between plaintiff and defendant with respect to each of the shipments set out in the complaint, and must be given force and effect, unless it was prohibited by the provisions of the Interstate Commerce Act itself, or some well established rule of law which has been deduced therefrom. This brings me to a consideration of whether the application of this rule would result in unjust discrimination or whether the rule itself is unreasonable.

As I read the rule it guarantees equality of treatment for all shippers and claimants alike. It simply imposes upon them an obligation to file with the defendant a claim for overcharge within two years from the date when the shipment was delivered, as a condition precedent to the enforcement of such claims.

The United States Supreme Court has many times considered the necessity for uniformity of treatment required of carriers toward shippers subject to the provisions of the Interstate Commerce Act. Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075; Kansas City Southern R. Co. v. Wolf et al., 261 U.S. 133, 43 S.Ct. 259, 67 L.Ed. 571; A. J. Phillips v. Grand Trunk Western R. Co., 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774; Meeker v. Lehigh Valley Ry. Co., 236 U.S 412, 35 S.Ct. 328, 49 L.Ed. 644.

In A. J. Phillips v. Grand Trunk Western R. Co., supra, claimant commenced a proceeding for the recovery of overcharges almost five years after the overcharges had been paid. At that time the Hepburn Amendment (now Section 16 of the Interstate Commerce Act) provided that complaints for damages should be filed with the Commission within two years from the time the cause of action accrued, and that a petition for the enforcement of an order for the payment of money by the Commission should be filed in the Circuit Court within one year from the date of the order, and not after. The Act contained no express limitation as to the time within which actions for the recovery of damages for overcharges might be filed in the courts. Plaintiff there contended that the action was governed by the Michigan Statute of Limitations, while defendant contended that the two-year period prescribed by the Interstate Commerce Act applied. In the instant case plaintiffs contend that the fixing of a limitation of action is a legislative matter and that the failure of Congress to prescribe a special statute of limitations dealing with overcharge claims against freight forwarders, similar to such action with regard to railroads, cannot be construed as a delegation of its legislative function to the freight forwarder, subject to the Commission's supervision as to the reasonableness of the limitation. That the silence of Congress in this respect indicates an intention to leave the question of limitation to the statute of limitations of the state in which the right of action arose, in this instance the State of New York, which provides for a limitation of six years.

In upholding the contention of the defendant carrier the Supreme Court in the Phillips case, said [261 U.S. 662, 35 S.Ct. 446]:

"To have one period of limitation where the complaint is filed before the Commission, and the varying periods of limitation of the different states, where a suit was brought in a court of competent jurisdiction; or to permit a railroad company to plead the statute of limitations as against some, and to waive it as against others, would be to prefer some and discriminate against others, in violation of the terms of the commerce act, which forbids all devices by which such results may be accomplished. The prohibitions of the statute against unjust discrimination relate not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments, or the waiver of defenses open to the carrier. The railroad company therefore was bound to claim the benefit of the statute here, and could do so here by general demurrer." This same doctrine was confirmed in the case of Kansas City Southern R. Co. v. Wolf et al., supra.

I am of the opinion that the enforcement of defendant's tariff rule does not result in unjust discrimination but on the contrary makes for uniformity and equality of treatment among the various shippers, by not permitting preferences and discriminations.

That the two year period prescribed in defendant's tariff rule for the filing of claims is a reasonable one is established by the Schou-Gallis case, supra, where the Commission held:

"The only effect of the rule under consideration is to provide a time limit within which freight forwarders will entertain claims for overcharges filed with them by shippers. For this purpose a two-year period is not less than a reasonable time

* * * We further find * * * that the defendant's practice of declining to pay overcharge claims presented to it after the expiration of a period of two years from the date on which it makes delivery or tender of delivery of the shipment, is not unlawful."

 Finally the basic question to be resolved in this case is whether or not a freight forwarder may lawfully require of a shipper, as a condition precedent to the maintenance of an action at law, for overcharges, that the claimant file its claim with defendant within a two-year period. I believe that a freight forwarder may lawfully do this, and that such a tariff rule was contained in the contract of carriage entered into between the shipper and the freight forwarder in the instant case. Moreover the right of a carrier to impose a reasonable limitation upon the period of filing claims is provided for in Section 20(11) of Part I of the Act, which has been specifically incorporated, by reference, into Section 413 of Part IV of the Act, which covers freight forwarders.

Plaintiffs' motion to strike the Second and Third Defenses will be overruled, and judgment on the pleadings will be rendered for defendant.